The Commissioner of the Alabama Department of Corrections v. Advanced Local Media. We'll begin with Mr. Frisbee. Good afternoon and may it please the Court. My name is Stephen Frisbee and I represent the State of Alabama in this case. No circuit has ever recognized a common law right of access to a State's lethal injection protocol. And no circuit has ever recognized the right of the press to access unfiled documents in an already disposed of civil proceeding. But the District Court here did both when it granted the press's motion for right of access to Alabama's lethal injection protocol and it ordered the State to open its file in an already disposed of case to provide the protocol to them. Mr. Frisbee, before you move on to the argument, could I ask you one question to see what it is you're maintaining on appeal? You're not objecting to the unsealing of the proceedings before the District Court, for example, the transcripts of the hearings held before the District Court? You're just objecting to the unsealing of the protocol itself. Is that accurate or not accurate? Yes, Your Honor, that is an accurate statement. The State does not object to the District Court's decision to unseal the transcripts and I believe Mr. Hamm's second amended complaint in this case. What it is objecting to, however, is the decision to require the State to provide the press after the case has been disposed of the confidential lethal injection protocol. And the State maintains that the District Court's decision in this case, it should be reversed for three reasons. First, there is no right of access to a State's confidential lethal injection protocol. Second, even if there were such a right, this Court has held for 30 years that the right does not extend to unfiled documents in a civil case. And third, even if the right of access did extend to unfiled documents in a civil case, the State's interest in keeping a protocol confidential outweighs the press' only stated interest in accessing it. Now, turning to my first point, there is no right of access to a State's confidential lethal injection protocol. The only court to handle this issue squarely has been the Eighth Circuit where Larry Flint asked for a copy or the court to unseal Missouri's lethal injection protocol. If the protocol had been filed, would it constitute a judicial record? No, Your Honor. The State's position was that it was, well, number one, it wasn't filed in this case. I know it wasn't filed. But if it was filed, would it have constituted a judicial record? Your Honor, it could be, I think, arguably a judicial record at that point, and then you get into the analysis of the balancing of the interests. But I think, I'm sorry, Your Honor. And if it was a judicial record, if it had been filed and it constitutes a judicial record, then it would be subject to the common law right of access, right? Well, Your Honor, I think the State's position in this case is that if any party, Doyleham or the district court, tried to move the or admit the document, the lethal injection protocol, into the record to try to make it an exhibit in the district court, for example, the State would have objected. Because this court, as well as many others, have said that even a death row inmate is not entitled to a lethal injection protocol to litigate a method of execution challenge. The State provided the lethal injection protocol in this case to Mr. Ham to further this court's stated policies with regard to discovery and keeping litigation moving to avoid one more unnecessary appeal in this court, and provided that district court occurs. So if my understanding is correct, if it had been filed, then it would have constituted a judicial record, and then the court would have had to balance the interests of the State against the interests of the press then, right? Your Honor, yes. I think it would apply to any document that's actually made a judicial record. But I think the State's point is that it would not have, it would have objected to the court trying to make it a judicial record in this case. It would have objected, and then the court would balance the competing interests of the State against the interests of the interveners. Your Honor, I think that if the court had tried to do that, we would have objected, and we would have come up here, and we would have asked this court to keep that record out of the public domain. Your objection might have been overruled, right? Yes, Your Honor. It very well may have been. But this court has held in Wellins and in Grayson that this type of document is one that a death row inmate is not even entitled to litigate his method of execution claim. And if he's not entitled to it to litigate his method of execution claim, the press is not entitled to it or the court is not entitled to put it into the public domain in that way. And the State provided this document to Mr. Hamm under a confidentiality agreement that the court signed. What 11th Circuit case is that, that the media is not entitled to the death penalty protocol if it's filed as a judicial record? What's the cite for that case? Well, Your Honor, there is no 11th Circuit case that cites that. But the one circuit that has addressed the issue has been the 8th Circuit in Flint v. Lombardi, and that was in 2018. Actually, it was about 15 days, decided about 15 days before the press moved to intervene in Doyle Hamm's case to ask for the protocol. And in that case, the 8th Circuit said that the press does not have a common law right of access to a state's confidential lethal injection protocol. But they also went on in that case to say that there is no constitutional right of access to a lethal injection protocol either. The 8th Circuit is the only court to squarely address the common law right of access issue. But in that case, too— What is it about an execution protocol that makes it so unique in your view? If the state of Alabama or the state of Florida or the state of Georgia had a protocol for how it was going to try to feed inmates a diet that was substandard even by prison standards, would that be something that was presented as a judicial record in an Eighth Amendment case or a prison conditions case? Would that also be immune from unsealing? Your Honor, I think it's not just the state's position that the lethal injection protocol is the type of document that is immune from being dispersed to the public. I think that is true. This circuit has said that death row inmates can't even get it. Okay, but they can't get it in a certain scenario. And I'm asking you, what is it about that protocol that makes it, in your view, immune from a common law right of access? Well, Your Honor, I think if you can get over the threshold question of whether it's even a judicial record in the first place— Let's go to that issue. What do you do with Newman v. Graddick? Which, despite what you say the case writes or doesn't write, that case directed the unsealing of prison lists provided by the state or a director of corrections that were not filed in court. So whatever was argued, whatever was not argued, that case ordered the unsealing of documents that had not been filed on the docket and, according to your view, were not judicial records. How do you get around Newman? Well, Your Honor, I get around Newman in another way, too. There's no indication in the decision itself in Newman, and I don't have access to the docket sheet in that case, about whether those documents provided under a consent decree to the court— What does it matter? If your position is that it has to be filed in the docket by a party, what does it matter? If they were filed in the Graddick case, Your Honor. They were sent to the judge pursuant to his direction, but they were not filed on the docket, according to everything I've been able to gather so far. And they were ordered unsealed on appeal. How do you deal with that case? Well, Your Honor, I think we deal with that case by looking at the cases that follow Graddick. Graddick is first in line. The prior panel precedent rule requires us to adhere to the earliest decision in a line of cases that espouses a particular holding. Well, and I think, Your Honor, first of all, Graddick does not involve the same type of documents at issue in this case. In this case, what we're dealing with are documents that were provided in discovery under a confidentiality order. In Graddick, you're talking about documents that are provided after a case under a consent decree to the court. That was an enforcement, though, of the consent decree. Yes, Your Honor. The judge asked for the list. That's correct, Your Honor. It was not made a part of record. He asked for a list of the inmates, and then he picked and chose which inmates to be released. That's correct, Your Honor. It was integral to his decision, though, wasn't it? Yes, Your Honor. Isn't that why it was disclosed? Yes, it was part of it. Well, Your Honor, I don't think it was. Let me ask you this. Just as a general proposition, forget this case. Is the public entitled to know what a judge relies on in reaching a decision? No, Your Honor. There is no need and rely upon rule. So a judge could decide a case with no record on file, and the public is not entitled to know how the judge got to the decision? Well, Your Honor, in that case, there are no judicial records, and I think the common law right of access that the courts— No, no, no. Your argument is, I take it then, that the public is not entitled to know what the judge relies on in reaching a decision. Well, Your Honor, my argument— recites what he relied on. Still not entitled to see it. Yes, Your Honor. My argument would be that there is no need and relied upon rule when you're looking at common law right of access. What it is, and this Court has said, and it rejected the needed and relied upon approach in the AbbVie Products case, where it says you look at the type of filing a document accompanied, not whether the court relied on some document in reaching a decision to determine whether a document is a judicial record in the case. Why would the public be interested in anything the judge didn't rely on? Well, I don't— Even if it's filed. I'm not sure, Your Honor, but the AbbVie Products case— Suppose you had 100 entries in a case, and 75 or 80 of them had nothing whatever to do with the court's decision. Does the public have a right to have all those copies? Your Honor, the public has— Go to the courthouse and look at them, I suppose. Your Honor, the common law right of access allows the public to gain access to documents that are actually judicial records in a case. Documents that are used in making a decision. Isn't that what the public is interested in? No, Your Honor. They're not interested in the decision the judge reaches? Your Honor, they're interested in the decision the judge reaches, but they're not entitled to documents— I don't care about what they're entitled to. Is the public interested in why a judge decides the case, what he bases it on? Your Honor, the public could be interested in that. All right. Is that a legitimate interest? Your Honor, I guess it depends on the judgment of the court, Your Honor. The judge relies on certain materials provided by the parties, which are not on the record, and then issues a decision saying that it relied on certain things, but does not disclose them. Is the public entitled to know? Your Honor, again— The public's right to know in a case, in a common law right of access question, depends wholly on the documents being a judicial record. Now, if the court relies on, for example— Why is the public entitled to know what a judge relies on? So it could have confidence in the judicial process, Your Honor. This Court has said, and other courts have said, that to maintain or to make sure there's confidence in the judicial decision, that the public can have a right of access to judicial records that are filed in a case. Now, if a trial judge or district court judge cites— So the rule is the public has a right to know what the judge relied on in deciding a case, but cannot have it unless it's a public record. That's your whole position, then? No, Your Honor. The position is that, again, in AbbVie— You said the public had a right to know why a judge decides a matter. Well, Your Honor, the public has a right to the order itself that the judge— Oh, no. I didn't know that. They seize the order and doesn't know how did the judge get there. Are they entitled to know how the judge got there? Your Honor, not if it relies on a document that is not in the record in this case. Okay. And that's the point that this court made in AbbVie Products, which is exactly what the pharmaceutical company, AbbVie, wanted. They attached a financial analysis to a complaint and tried to argue that the financial analysis that was under seal was not a judicial record because the court did not rely on it. It never talked about it in its decision in the case. And this court rejected that approach, saying, we don't look at how many times a court cites something or relies on something in reaching a decision to determine whether it's a judicial record. Instead, you look at the type of filing accompanied. And so a file—it did not accompany a filing. If it appears nowhere in the record, as the district court found in this case, it cannot be a judicial record that is subject to the common law right of access question. That is the threshold question and the problem that the district court has in this case. The district court recognized time and again— How do we decide what records that are on file should be disclosed? Your Honor, it is any document—I think this is what the— No, they don't have a right to any document because they're innocent in the judicial process. Yes, Your Honor. The public's innocent in the judicial process, but they're only entitled to the documents that are on file. Your Honor, the public— That had to do with the judicial process. Your Honor, the public has a right to— Is that right or not? To petition for any document that is a judicial record that is attached to a filing that requires resolution on the merits. That is part of the judicial process. That's correct, Your Honor. Okay. But not matters that were not filed. Yes. In this case, it's just—it's a material—it's a document. The lethal injection protocol is a document that never found its way into the case in the district court. Now, Judge Bowdrey found that to be true in her April 3rd order when the press moved to intervene. In fact, they couldn't point to a place in the record in the district court to ask the court to unseal anything. What they asked for was document 54, which they believed to be the— You don't dispute that Judge Bowdrey relied upon the death penalty protocol in order to reach the merits of the issue in the case. You're not denying that at all, are you? Your Honor, the State does not deny that she cited and actually, in the press's words in this case, summarized the protocol at length. So she used it to make her decision? She cited and she discussed the protocol in her February 6th order, but then after this court remanded Mr. Hamm's case back to Judge Bowdrey and ordered Judge Bowdrey to conduct an independent medical evaluation of Mr. Hamm's veins, the independent medical examiner said his veins were fine, and Judge Bowdrey's response to that was saying that that there was no further need to delve into Alabama's lethal injection protocol. So the ultimate decision in this case to deny Mr. Hamm a stay of his execution, she did not need the protocol to rely on her decision. But it has to be an ultimate decision that is made by the judge, not a decision made along the way of a case? Your Honor, the case law says that the documents filed in connection with motions, dispositive motions that require— But filing is not important. It just happens that they were filed. In those cases— In those cases, there was not an issue about whether documents not filed could be discovered. Your Honor, not to my knowledge, no. But the court did take the time to point out these documents accompanied filings. This court did that in Chicago Tribune Company, in AbbVie, and in the Alexander and Grant—Alexander, Grant & Company litigation case. And in Chicago Tribune, I think, is instructive on this because in Chicago Tribune, what they were looking at was the motions— or discovery motions filed with the court that include documents. And this court said those aren't subject to the common law right of access. Those are documents that are even filed that aren't subject to the common law right of access. But when you have a confidentiality order, and we've sanctioned the use of umbrella confidentiality orders, don't the parties have to justify the confidentiality order when someone seeks to unseal and show both a compelling governmental interest and a means narrowly tailored to that interest? Don't you have—putting aside the whole common law access route, once somebody says, hey, that document should not have been sealed, don't you have to justify under those two standards? Yes, Your Honor, that's correct. But what's the compelling governmental interest here, given that the district court redacted the protocol to remove all security information? Well, Your Honor, to answer that question, the district court didn't redact anything. In fact— Well, she told you to submit a copy redacting whatever you thought was sensitive security information. You didn't act on that order? Your Honor, that was the order the state objected to in asking the district court to stay to appeal to this court. And it highlights the problem here. But as things stood, the district court gave you the opportunity to redact whatever security information you thought was in the protocol. So if the district court gave you that option, what is the compelling governmental interest in keeping the rest of it under wraps? Well, Your Honor, and if I may, before answering that question, say that the confidentiality would—to get to that analysis, there has to be a document to unseal in the first place. There is no document— No, I'm citing cases that we've dealt with, with documents that were exchanged in discovery. Wilson, for example, where we haven't talked about the common law right of access, but because the public generally has a right to open judicial proceedings, both civil and criminal, once the parties agree and the court agrees to put something under a confidentiality order, that's always subject to a later challenge because proceedings are supposed to be open. Whether right or wrong, we've said that in discovery cases, not cases where something's been filed in court on behalf of a party. But what do you do with those cases? Yes, Your Honor, and I would say this. The lethal injection protocol is—every court that has wrestled with the issue about whether even a prisoner or the press can gain access to that document are not entitled to it. In fact, the— I'm going to ask you one question on my nickel and then you can reserve some time. Let's suppose in a given case that the protocol is germane. As a matter of fact, it's integral in the district court's decision, but it's not filed. The case comes up on appeal.  And let's suppose we can't write a decision that can command the respect of the public and the law in general without revealing the protocol because we have to discuss it. Are we precluded from doing that? Your Honor— You do a yes or no and then you can explain. Your Honor, I would say yes. If it's not in the record, this court could not discuss it. Then what do we do with the case? Your Honor, I think it would require remanding to the district court. No, no. What do we do with the case? It's here before us. There's a matter that was not on file. It was claimed to be privilege or whatever the case may be. And we need to deal with it in order to reach a decision that has some precedential value. So your argument is we can't do that. In this case, Judge, it would just be— No, I'm not talking about this case, Counselor. We're dealing with principle. Are you saying that we cannot do that? Your Honor, I would say that if there is no document in the record for this court to rely on— Would you say that we cannot do that, Counsel, in a case in which it's part of the decision? Your Honor— Just say yes or no and then you can sit down. We cannot do it. Your Honor, I don't think this court could rely on a document that is not in the record, no. Okay. You save some rebuttal time. Thank you. Don't take the harsh questioning of your brother over here as any indication that you've got one leg up in this case. I won't, Your Honor. Good afternoon, and may it please the Court. My name is— Ms. Martinez. Yes. My name is Katherine Martinez, and I'm a third-year law student representing the press intervening our appellaties in this case. This case is about the public's common law right of access to a record that was submitted to the court in connection with the judicial resolution of a substantive issue. The common law right of access secures both the integrity of the courts and maintains public confidence in the judicial system. The State makes several arguments to prevent disclosure of the protocol, but none are correct. Today, Your Honor, I want to make three key points. First, the protocol is a judicial record. Second, the State hasn't demonstrated that the district court abused its discretion in finding that the State failed to overcome the presumption in favor of access to judicial records like the protocol in this case. And third, Your Honor, the trial court did not abuse its discretion in granting intervention. Turning to my first point, the legal injection protocol is a judicial record. In FTC v. AbbVie products, this court held the common law right of access attaches to documents presented to a court in connection with the judicial resolution of a substantive issue. But a later case, AbbVie, seems to suggest that it has to be filed to be a judicial record. You think AbbVie is wrong or that it deviated from prior precedent or that it's distinguishable? No, Your Honor. We believe that AbbVie is correct, but that AbbVie doesn't hold that formal filing is necessary for something to be a judicial record. In AbbVie, this court drew the line that it already drew in Chicago Tribune v. Bridgestone-Firestone, that discovery documents attached to discovery motions are not subject to the common law right of access, but discovery documents attached to substantive motions like pleadings or motions for summary judgment are judicial records. In AbbVie, this court did not hold, indicated that filing was sufficient, but this court did not hold that filing was necessary. Judge Jordan, as you mentioned on – Intending that the press has a right to documents that are not germane to the decision-making process. Your Honor – Important, relevant. Yes, Your – Are they entitled to anything that's in the record? Well, Your Honor, if a document was submitted to the court, if a party submitted a document to the court to resolve a substantive motion, even if the court ultimately didn't rely on that record, it's still a judicial record. The public has a right – Oh, I realize that's a judicial record. You can go down to the courthouse and look at the record. Anybody in the clerk's office. You're talking about sealed records because otherwise, as Judge Schoflat said, someone can go to the clerk's office and look at a public docket and see what's been filed or hasn't been filed. Right, Your Honor. In this case and in this court's precedent considering – has considered documents that were initially under sealed and determined whether or not that order was issued directly. Usually when they're sealed, it's an indication that they're important to the court's decision-making. Yes, Your Honor. And if a document – the rule in this court – They don't seal documents that are irrelevant. That's right, Your Honor. But the rule in this circuit is that if a judicial record is submitted to the court in connection with the judicial resolution of a substantive issue, it becomes a judicial record. You could have an instance in which a party submitted a record that it thought was relevant and the court ultimately decided – Well, there's a difference between a record that is on file and something that is integral to the judicial process. Right, Your Honor. Everything's on – we have a lot of – we'll call it garbage that's filed. People file most anything sometimes. Right, Your Honor. Stuff from other cases. You name it. Right, Your Honor. And that's what this court held in Ad V is that – You're talking about sealed matter, basically. Yes. And they're sealed because they're important.  And I think we all agree that this record was important in this case. When was it sealed? It was sealed, I mean, in the course of things. When was it sealed? It was sealed before the court made its decision, right? Yes, Your Honor. At the time, the state had filed a motion for summary judgment, whereas Mr. Hamm's counsel had filed a motion for preliminary injunctive relief. So the court is not in a position to determine whether or not there's information in there that's prejudicial to the state until after the hearing, right? Well, right, Your Honor. But when the court had these motions before it, the court told the state that it needed the protocol in order to resolve their motion for summary judgment. At that point, then, the court made a determination with the state and entered a protective order. But those couldn't be modified. Right, but I guess the point that I'm making is the court can't put the cart before the horse. It has to look at the document that is sealed before it decides whether or not it's going to grant access to the interveners, right? Right, that's correct. And in this case, that's what the district court did. After we moved to intervene, the district court had seen a copy earlier in the litigation and made factual findings about whether or not the right was overcome. But as I mentioned, in Ab B, this court made clear that while filing may be sufficient, this court did not hold that it was necessary. And Judge Jordan, as you noted earlier, in Newman v. Gradick, the list of the prisoners least deserving of further incarceration were never formally filed with the court. But that court still held that the common law right attached and that the presumption in favor of access was not overcome. And courts in this circuit, or district courts in this circuit interpreting Newman have found similarly, finding that documents, even if they weren't formally filed or don't appear on the electronic docket, were still judicial records subject to the common law right of access. That's what the district court did in United States v. Noriega and in United States v. Byrd. Mr. Frisby says in part that the Eighth Circuit has rejected a similar attempt to obtain a different state's execution protocol. So why is the Eighth Circuit wrong or why is that case different or why are we, shouldn't we be persuaded by it? Well, Your Honor, in that case, Flint v. Lombardi, which as Mr. Frisby noted was decided in 2018, the litigant wasn't seeking access to Missouri's lethal injection protocol. The litigant was seeking access to declarations from witnesses about the qualifications of two particular members of the medical team involved in Missouri's process. And he said that he wanted to do it because he wanted to know whether or not they were qualified or whether they had certain certifications. And in that case, the Eighth Circuit held that he didn't have a right of access to those documents because they contained personal information about individuals that could be used to re-identify them. That's a much different case than what we have here. The District Court had already noted that while, and we agree that the state has a legitimate interest in privacy, any information that's private in the protocol and any information that bears on the security protocols of the prison. And we agree that's a legitimate interest. But the District Court was correct in holding that those interests could be protected through redactions rather than nondisclosure. So in the Eighth Circuit case, the documents that the media sought access to were not redacted? I don't believe so, Your Honor. Okay. That's a difference between this case and the Eighth Circuit case? Well, the Eighth Circuit case was specifically about qualifications of personal and private individuals. These were two members of the medical team in Missouri, and they wanted to know whether or not they were qualified to carry out their duties in the process. The Eighth Circuit was concerned that this could be used to identify those individuals as private persons. And that's not what we're trying to do in this case. And we have no reason to believe that kind of information is in the protocol. Well, by implication, the Eighth Circuit was saying it otherwise would be discoverable to the press. I believe— When the Eighth Circuit gets into the exercise of being concerned about the individuals, by implication, the Eighth Circuit is saying that that's part of the right of access. Right, Your Honor. That we're going to withhold these documents. Yeah. I believe the Eighth Circuit, in applying that sixth factor that this Court also applies, was concerned about those private individuals. Any time there's a balancing, there's a tacit admission that material is available to the public, generally. Yes, Your Honor. In that balancing test, it starts with the presumption that judicial records are open to the public. So in order to gain nondisclosure, that presumption has to be outweighed, along with any other factors weighing in favor of disclosure. And, Your Honor, in this Court, given that the correct rule is that documents submitted to a court in connection with a judicial resolution of a substantive issue are judicial records, that the Circuit's precedent is backed up by the purpose of the common law right in the first place. As Judge Pryor wrote in Perez-Guerra v. United States Attorney General, what transpires in the courtroom is public property. And both judicial proceedings and judicial records are presumptively open to the public. And the reason why the Supreme Court and this Court, along with the other circuits, have recognized this common law right of access is because it's important for many reasons. It's a right that's grounded in the democratic process. It helps the public to appreciate fully the often significant issues at issue in public obligations and the working of the court system. It helps to secure the integrity of the judicial process, and it helps to maintain public confidence in the courts. And the definition of a judicial record that this establishes serves the purpose of that rule. The right ensures that any time a court is serving a judicial function, the public is able to see the material submitted to the court and on which the court might rely. This case is a perfect example of why the Alabama's formal filing distinction is incorrect. The protocol was the most significant record before the district court when it was ruling on Mr. Ham's or the State's motion for summary judgment and Mr. Ham's motion for preliminary injunctive relief. This entire case is about whether the procedure laid out in that protocol could be applied in Mr. Ham's case in compliance with the Constitution. And it's a key document to understanding why the district court ruled the way it did, finding out there were genuine issues of material fact, and ordering an independent mental examiner to examine Mr. Ham. The district court recognized the centrality of the protocol when it told the State that it needed the record to resolve their motion for summary judgment. As the court explained below, the lethal injection protocol was central to Mr. Ham's as-applied claim. It needed to review the protocol as much, if not more, than Mr. Ham did. It relied heavily on the protocol in issuing its decision, and the protocol was vital to resolving the merits of this case. The State's rule would undermine the purpose of the common law right of access. It would prevent the public from understanding the district court and this court's decision and opinions in this litigation. It would prevent access to the key document that was before the court in this case. The State's rule goes against both this court's precedent and the purpose of the right. As I mentioned earlier, courts in the circuit have not made a formal filing distinction. And while it might be sufficient, this court's never held that it was necessary that something be formally filed to be a judicial record. Another point is that the State's made a lot of hay about this court's holding the FTC v. Avee and this court's holding in Chicago Chippewa and about discovery documents. But this protocol was not a discovery document. And the key reason that it was not discovery was because it was submitted to the courts in connection with the judicial resolution of the State's motion for summary judgment. Well, it was probably a combination of both, right? Because didn't Mr. Hamm request it or ask for it in discovery? Your Honor, the district court noted that neither party had been able to conduct discovery before resolving the motion for summary judgment. Well, formal discovery, but parties exchange things informally all the time without submitting themselves to a formal discovery process under court order. Rule 26, for example, requires parties to exchange a certain amount of information before the court even gets formally involved. Was the protocol turned over to Mr. Hamm's counsel before the district court said that it wanted to see it? No, Your Honor. Mr. Hamm's counsel had actually, even before filing his 1983 complaint, Mr. Hamm's counsel had asked for a copy of the protocol and the State said no. After they had filed, they again asked the State for a copy of the protocol and the State again refused. When it came for the motion for summary judgment and Mr. Hamm's motion for preliminary injunctive relief, the court then told the State to give a redacted copy of the protocol to Mr. Hamm and his counsel and to give a copy of the protocol to the court in order to resolve their motion. So this wasn't in the context of discovery. It was necessary to resolve the main issue, whether there were genuine issues and material facts, whether the State could execute Mr. Hamm in compliance with the Constitution. So if the interveners get the protocol, it will be a redacted version? Yes, Your Honor. We agree that the State has legitimate interest in privacy and security matters that may be in the protocol. While it's up to the district court to make sure those redactions are correct and that those redactions narrowly scale to serve that interest, and we reserve the right, of course, to contest that if that's not the case, but we agree that it will be a redacted version of the protocol and we have no issue with that. I just want to note, Your Honor, that discovery documents, as this Court has held, are different from judicial records. And it's true that a document that initially starts as a discovery document can become a judicial record when it's attached to a complaint, when it's attached to a motion for summary judgment. Whenever it's attached to something or submitted to resolve a substantive dispute in this Court. If Your Honors have no further questions about whether the lethal injection protocol is a judicial record, I'll move on now to the second issue, whether the presumption in favor of the right of access was overcome. On that note, Your Honor, this Court's recognized and the Supreme Court has recognized that district courts are in a superior position to decide whether to modify protective orders. And the decision as to access is one left best to the discretion of the trial courts. And that's why the district court's decision is reviewed under the abusive discretion standard of review. Here, the district court properly identified and evaluated the six factors that are necessary in determining whether or not the presumption is overcome. And, Your Honors, it is a strong presumption that records are open to the public. Judicial records are presumptively open and factors counseling against disclosure must outweigh that presumption. Here, the district court found that the four factors weighed in favor of disclosure, one factor weighed against disclosure, and the sixth factor could be sufficiently addressed through redactions rather than total nondisclosure. On that first point, Your Honor, the factor is whether or not the records relate to a matter of great public interest. And the district court properly found that given that this is a death penalty litigation and that's a matter of public policy, it's a matter of great debate in this country and in the state of Alabama that the records clearly related to a matter of great public interest and that factor weighed in favor of disclosure. As a second prong, Your Honor, is whether or not access promotes understanding of a matter of historical concern. There was a great deal of media reporting both nationwide and at the local level in Alabama about Mr. Hamm's execution and the state's eventual failure to execute Mr. Hamm. Having access to the protocol, as the district court correctly found, would help the public to understand what happened both in the litigation in the district court and in this court and would help the public to understand what happened in the failed execution. As the district court noted, it might also help the public to understand how this scenario happened and how it might be avoided in the future. The third factor also weighed in favor of disclosure, as the district court properly found. The district court found that there hadn't been substantial access to the protocol and that's true. The district court noted that it kept its description of the protocol deliberately vague and that it didn't quote extensively from the protocol or summarize it extensively. Further, the district court also noted that while, to the extent there is any summary of the protocol, that does not substitute to access the record itself. And the fourth factor, Your Honor, whether or not the record is sought for an improper purpose, that's clearly not the case here. In their briefing, the State argued that this was sought to promote a public scandal, but that's not the thing that this Court or the Supreme Court had in mind when they talked about the public scandal prong. The public scandal prong involves private persons. It involves situations when somebody is taking access to records in a divorce case in order to embarrass or harass somebody or when someone is seeking records in order to use it as libel or defame somebody or something of that nature. The public scandal prong is focused on private persons. In this case, as both the district court noted and as I've said, whether or not the State could carry out the procedure in the protocol in compliance with the Constitution is a matter of great public concern and a matter of public interest. This is not the kind of scandal that the Supreme Court or this Court had in mind when they devised that prong. And the district court properly found that factor, again, weighed in our favor. And finally, Your Honor, as we've talked about the sixth factor, whether or not there was a legitimate security or privacy interest in the protocol. As I've said, we don't contest that interest. We believe it's a legitimate interest, but it can be addressed sufficiently through redactions. And if Your Honors have no questions about the intervention point. Well, there's a curious little question about the intervention point. Your motion was filed the same day the amended complaint was dismissed without prejudice. That's correct, Your Honor. So one question would be whether there was a case for which Rule 24 could apply. Let's assume that it was filed the next day. Then, in effect, your motion would be equivalent of a complaint, a lawsuit against the Commissioner, and you're seeking the same thing you are now. And you assert a First Amendment right, so you'd have federal question jurisdiction. So the problem here is, do we treat the motion as having been filed before the dismissal, although momentarily before? In which case Rule 24e can apply? Or how do we do? Well, Your Honor, as this Court's recognized in Brown v. Advantage Engineering and in other cases, the way to assert the common law right of access is to intervene. But I'm not concerned about the allegations made to support access. I'm concerned about whether there was a case there. Yes, Your Honor. If there wasn't a case there to intervene in, then you, in effect, have a new case. Do you follow me? I do, Your Honor. And the judge didn't give any indication that she was treating the motion as, in effect, a complaint in a new case based on federal question jurisdiction. Right, Your Honor. I think that's in line with how this Court has treated past motions to intervene. This Court has allowed motions to intervene to assert the common law right of access months or years after a case has been dismissed and has not treated it as a new case. Well, I understand that. But nobody raised the question of whether the rule is even applicable. The motion to intervene. Your Honor, right. There's nothing in Rule 24 that speaks to the right of intervention after the case is over. That's right, Your Honor. There's no question, in my mind anyway, that the judge could, if the judge recognized that, treat the motion to intervene as if it were a new complaint. But the state didn't file a Rule 59e motion afterwards and say to the judge, you granted the motion after the case was over. So what do we do? Treat it as if it were made before the case was over, as it were, in which case, in which event the courts can still grant the motion. Right, Your Honor. I think that is the proper way to view this. And that's the way this Court's viewed it in other cases. And I also want to note that, Your Honor, that courts have continuing jurisdiction over sealing orders even after a case has been dismissed or a case has ended. The court's sealing orders operate like ongoing injunctions, and the courts still retain jurisdiction over whether they should be modified or whether they were granted improperly. Is that what the Court did in McDonald v. E.J. Lovino Company? That case was cited in the briefs, wasn't it? Your Honor, I'm sorry, I'm not familiar with that case. I can submit additional briefing or a response on that issue to the extent that you would like that. Well, it retains jurisdiction to the extent that the order can't be unsealed without a court order. Right, Your Honor. A sealed document can't be revealed to anybody without a judge's order, usually a judge's initials, the envelope with the date, whatever it is. Right, Your Honor. I think the point is just in this circuit, the way that the Court has treated motions to intervene after cases have been dismissed in order to assert a common law right of access is that the Court still has the ability to modify the protective order or the sealing order or determine if it was . . . Well, it has to be a sealing order because it doesn't have jurisdiction over the other matters. Right, Your Honor. I think just in this Court's precedent, this Court and other circuit courts have noted that the proper way to assert the common law right of access, even after a case has been dismissed to records that have been sealed, the proper way to do that is to move to intervene, and the Court can then resolve that issue of whether or not the sealing order was improperly granted or should be modified. And that's what the Court did in this case, and that's proper on this Court's precedent. And I also want to note, Your Honor, that the decision to grant intervention is a decision best left to the district court, and is, again, also the permissive intervention under 24B is reviewed for an abuse of discretion standard, and the Court . . . This is a 24B intervention, not A. The Court granted intervention both under 24A and 24B. Under both, yeah. Right. But in any case, since it granted them both, the permissive intervention standard is reviewed for abuse of discretion, and the district court clearly did not abuse of discretion in granting intervention only mere hours after the case had been dismissed. But, Your Honor, if there are no further questions, I just want to be clear, the lethal injection protocol is a judicial record. The presumption in favor of access to that protocol was not overcome, and intervention was proper and timely in this case. We ask this Court to affirm the district court's decision and to send the case back to the district court to make the proper redactions before the protocol is disclosed. Thank you. Mr. Frisby. May it please the Court. Judge Joflat, to get to your point there at the end, the press's motion in this case to intervene was granted by the district court without allowing the State an opportunity to object. We understand that. You could have filed a Rule 59E motion, but you didn't. And, Your Honor, in our response to the district court's order requiring the State to respond to the press's motion to intervene and unseal the documents, the first thing the State asked in that was the Court to reconsider its order granting the press's right to intervene in this case in the first place. And the State made several arguments about the timeliness of the motion, and the Court denied that, the State's motion to reconsider. And the timeliness of the motion here, waiting until after the case was dismissed, it also highlights the problem with their balancing of the interest test. So if this Court were to assume that this unfiled protocol were a judicial record in this case, you'd still have to balance the interests of the parties in this case. And as the Eighth Circuit and this Court and other courts have pointed out, the States have a compelling interest in being able to carry out executions. Now, one of the – But that's not the same thing as being able to keep secret the protocols for carrying out those executions. When – I know history isn't always a guide, but when State methods of execution were challenged in the past, whether it was a firing squad in Utah or a gas chamber in Louisiana or hanging in the State of Washington, States produced their protocols. They told the courts, hey, for example, we're the State of Washington, we use the Army Field Manual in carrying out our executions by hanging, and therefore there isn't going to be any cruel and unusual punishment because the condemned person's neck will snap, and that'll take care of things, and it's a relatively instantaneous death. So as a historical matter, States have produced voluntarily their protocols to show courts and litigants, and for that matter the public, that they're doing things in a way that comports with the law. What is it, again, about Alabama's protocol that makes it so unique that unsealing is inappropriate? And, Your Honor, I can answer your question in two ways. First, some States do make their protocol public. Other States choose not to. The States that choose not to have, I believe, universally been upheld to be able to keep that protocol confidential. The only circuit court that has required the State to produce a confidential lethal injection protocol was the Ninth Circuit in Wood v. Ryan, where they made the State turn it over to a death row inmate, but that decision was summarily vacated without dissent by the United States Supreme Court. So States can choose to keep a protocol confidential. I know that, but I'm asking you legally, what is it that makes the protocol so unique that it has to be kept under wraps? And, Your Honor, this protocol from front to back, the State would argue, is riddled with security issues. The district court has told you that it's willing to redact if you give it the chance to redact, but it hasn't been able to do that yet because you asked rightfully for a stay and got the stay and we're here. Yes, Your Honor, and even the things that we have, that the court has said that we could redact from it, the issues in the protocol that the court said we cannot redact, the State would maintain, that they all entail the procedures and carrying out an execution, involved security details. Why is all of that? If you say, let's make up a hypothetical. Okay, this is not this case. This is not the State of Alabama. This is in a world far removed. The State says our protocol to save money is that we are going to have someone, a volunteer, come in, regardless of experience, and is going to try to find a vein in a condemned person and administer the lethal cocktail. Okay, let's say that is the protocol, and the State wants to keep that quiet and under wraps. What is it about that fictional State that makes its protocol so unique, so compelling that it has to be kept from everybody? Your Honor, in that case, if that's all the protocol said, that we're going to have somebody come in and do that, I think that's different from what we're talking about here. So it matters what the protocol says? Well, Your Honor, I think if the protocol, like the State says here, from front to back contains security problems, the State doesn't see a way to redact this. And then we have no assurance if what we do redact, the district court is even going to accept it. But, again, that still highlights the problem with the overarching problem with this case is that the district court, to unseal this document, has to ask the State, after a civil case has been disposed of, to open its files up, make redactions on a sensitive confidential document that no court has ever said that a State has to give over, and turn it over to the press. The problem is this case is— The interest, the media's interest doesn't arise until after the case has been dismissed, right? That's why the media has an interest in the case, because the case has been dismissed. Well, Your Honor, the media's interest, their stated interest, was so they could provide a historical understanding of the execution of Doyle O'Hamm. The interest by the media arose because there was a botched execution and O'Hamm's case was dismissed to his favor, and that's how the interest of the media arose. Your Honor, and I think the timing is important here to your point, is that the Doyle O'Hamm execution was scheduled for February 22nd. The press did not, the next day, go and file their motion to intervene in Mr. O'Hamm's case in the Northern District of Alabama. They didn't wait a week to do it. They didn't wait two weeks to do it. They didn't wait three weeks to do it. They waited 34 entire days. When they claim that the press— That can't be an unseasonably long period of time. I mean, if they had asked for it before, you would have said, we're an ongoing litigation. You know, we believe that we can legally put Mr. O'Hamm to death, and keeping our protocol secret, or at least not available to the public for the time being, is necessary. And then you would have waited until the case was over, when there was no pending execution of Mr. O'Hamm, and then you would have had to litigate the case again. Well, no, Your Honor. I think that our objections would still be the same, that there's still not a filed document to unseal in this case. Because it's not formally filed. Well, it's just because it doesn't appear anywhere, Your Honor. But that's different than why it's so important to keep it under wraps. I still have yet to hear a reason why an execution protocol that is going to be redacted as to security issues cannot be provided. Well, Your Honor, and again, the State, since 2002, the inception of the lethal injection protocol, has zealously guarded the protocol, the entire contents of the protocol. Now, there are things that are in the protocol that have been made public. For example, the consciousness assessment, I think, is discussed in this Court's opinions, several different opinions. The three-drug protocol, obviously, in this case, it's public that there are IV line placement, there's two IVs, and if the team cannot obtain peripheral venous access, then medical personnel will attempt to central venous access. And, Your Honor, too, to that point, the Court has detailed step-by-step in its February 6th order how to carry out or how the State is seeking to carry out. But I think what we're trying to figure out is what's the prejudice to the State if the protocol is redacted? How's the State prejudiced? Yes, Your Honor, but under this Court's balancing of interests test, the question, and the way they phrased it was  But that's not the test. The test is whether they've had substantial access to the contents of the protocol. So whether it prejudices the State is immaterial to that discussion. Rather, the question is, have they had substantial access to the contents of the protocol? It's clear that they have. They've reported on it ad nauseum. So you don't think prejudice to you is a factor to be considered? I don't think under that prong of the balancing of the interests test. Under any prong. When it gets to the State's ability to carry out executions, yes, I do think that the State would be prejudiced to turn over the document in a redacted form. How would it be prejudiced? Your Honor, again, the way that the protocol is written, there are security measures that are in there. And again, we have no assurance from the District Court that our redactions will even be accepted. Isn't that a factor that the District Court takes into consideration in determining whether or not the media is going to be granted access is whether or not there are security concerns that are sufficiently prejudicial to the State? Your Honor, that's what the District Court has allowed the State to do in this case if it's complied with its order to make the redactions. But again, this is a...  Yes, Your Honor. I believe that unsealing the document would be revealed for abuse of discretion. In short, the District Court in this case took the unprecedented step of exposing a lethal injection protocol to the press, and we would ask that this Court reverse it. Thank you. Thank you. The Court will stand in recess until you lose your order. Thank you.